**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MATTHEW J BALLISTER, III,<br><br>Plaintiff,<br><br>v.<br><br>UNION COUNTY DEPARTMENT OF CORRECTIONS, et al.,<br><br>Defendants. | No. 17cv573 (EP) (JSA)<br><br>**OPINION** |

**PADIN, District Judge.**

*Pro se* Plaintiff Matthew J Ballister, III, a state prisoner currently confined in New Jersey State Prison ("NJSP"), filed an Amended Complaint alleging Defendants Tiffany White, LPN; Claudia Teh, APN; and Winifred Obiora, APN, and others were deliberately indifferent to Plaintiff's medical needs while he was detained at the Union County Jail ("UCJ") and NJSP. D.E. 57 ("Am. Compl."). White, Teh, and Obiora have filed motions for summary judgment. D.E.s 149 and 151. Plaintiff has not filed any opposition to the summary judgment motions, but objects to the Court's February 5, 2024 Order sealing the unredacted version of White and Teh's Exhibit A ("Sealing Order"). D.E. 153. He also asks the Court to recuse itself. *Id.* at 39-44.

For the reasons below, the Court will **GRANT** White and Teh's summary judgment motion and **DENY** Obiora's summary judgment motion.[1] The Court will **DENY** Plaintiff's requests for recusal and reconsideration of the Sealing Order.

---

[1] The Court has reviewed the parties' submissions and decides the motions without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b).

I.  **BACKGROUND**

   A.  **Undisputed Facts**[2]

   1.  *Arrival at NJSP*

Plaintiff was transferred to NJSP from UCJ on December 21, 2017. White and Teh's Statement of Material Facts, D.E. 135-2 ("WTSOF") ¶ 4. Plaintiff was diagnosed with Hepatitis C before entering UCJ. *Id.* ¶ 5. Prior to his transfer to NJSP, Plaintiff complained of ear problems in 2016. *Id.* ¶ 6. Upon his arrival at NJSP, Plaintiff was examined by NJSP medical staff. *Id.* ¶ 7; White and Teh's Exhibit A, D.E. 147 ("Ex. A") at 136. Plaintiff informed the staff of his 2016 Hepatitis C and tinnitus diagnoses. WTSOF ¶ 7; Ex. A at 140. NJSP Staff performed an HCV antibody test for Hepatitis C that same day. WTSOF ¶ 7; Ex. A at 140.

   2.  *Hepatitis C treatment*

Plaintiff met with Defendant Paulo Verdeflor, APN on January 5, 2018 and expressed interest in Hepatitis C treatment. WTSOF ¶ 8; Ex. A at 122-23. Dr. Syed Husain[3] determined that Plaintiff was a candidate for Hepatitis C treatment on March 21, 2018. WTSOF ¶ 9; Ex. A at 113. On May 16, 2018, Dr. Husain recommended that Plaintiff receive the Hepatitis C treatment Epclusa for twelve weeks after laboratory testing. WTSOF ¶ 10; Ex. A at 109.

Plaintiff saw Dr. Husain again on July 18, 2018. WTSOF ¶ 12; Ex. A at 98. Dr. Husain "ordered that Plaintiff undergo laboratory testing and an ultrasound of his abdomen prior to beginning Hepatitis C treatment with Zepatier." *Id.* The tests were ordered on August 30, 2018.

---

[2] These facts are derived from Defendants' Local Civil Rule 56.1 Statement of Material Facts and the exhibits specifically referenced. *See* WTSOF; Obiora's Statement of Material Facts, D.E. 152 at 3 ("OSOF"). The Court adopts Defendants' Rule 56.1 Statements because "facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted." *Hill v. Algor*, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000); *see also* L.Civ.R. 56.1(a).
[3] Not named as a party in this matter.

2

WTSOF ¶ 13; Ex. A at 95.  "Plaintiff's ultrasound was scheduled for September 4, 2018, but it was determined that he could not proceed with the procedure that day because he had eaten after midnight despite instructions to the contrary."  WTSOF ¶ 14.

"On September 13, 2018, Plaintiff underwent Hepatitis C genotype 1 NS5a resistance laboratory testing."  *Id.* ¶ 15.  Dr. Husain reviewed the results on September 17, 2018 and recommended an ultrasound to approve the treatment.  WTSOF ¶ 16; Ex. A at 88-89.  The ultrasound was performed on October 23, 2018.  WTSOF ¶ 19; Ex. A at 78.  Plaintiff was approved to start Zepatier treatment on November 5, 2018.  WTSOF ¶ 20; Ex. A at 70.  Plaintiff refused to take the Zepatier, claiming that "'he did not get the proper information prior to medication being dispensed.'"  WTSOF ¶ 21; Ex. A at 68.  On November 24, 2018, White notified the medical provider of Plaintiff's refusal to take Zepatier because of alleged side effects.  WTSOF ¶ 22; Ex. A at 66-67.

NJSP medical staff sent a request to Dr. Husain on March 20, 2019 regarding Plaintiff's complaints about Zepatier.  WTSOF ¶ 26; Ex. A at 58.  On March 20, 2019, Dr. Husain recommended a twelve-week course of treatment with Epclusa if Plaintiff tolerated the medication.  WTSOF ¶ 27; Ex. A at 57.  Plaintiff tried one dose of Epclusa and refused to take any more.  WTSOF ¶ 33; Ex. A at 45.  Dr. Husain then recommended that Plaintiff try Mavyret for eight weeks with HCV testing afterwards.  WTSOF ¶ 34; Ex. A at 45.  Plaintiff received information about Mavyret, but declined to take it due to concerns about the side effects.  WTSOF ¶¶ 35-37; Ex. A at 42-43.

Plaintiff has refused Hepatitis C treatment since January 24, 2020.  WTSOF ¶ 38; Ex. A at 37.  NJSP medical staff has continued to monitor Plaintiff's condition.  WTSOF ¶¶ 39-43.  Dr.

3

Ashraf Haggag[4] met with Plaintiff on April 1, 2021 to discuss his Hepatitis C treatment. WTSOF ¶ 45; Ex. A at 15. Plaintiff refused treatment and was told to report to the clinic if he changed his mind. *Id.* Dr. Michelle Borowski[5] met with Plaintiff on May 14, 2021 to discuss alternative Hepatitis C treatment. WTSOF ¶ 46; Ex. A at 13. Plaintiff told Dr. Borowski that he would "do his own research" and get back to her. *Id.* Plaintiff saw Dr. Borowski again on June 1, 2021 but told her that he "was not 'in the right frame of mind' to speak with her and had stress related to the medical department." WTSOF ¶ 47; Ex. A at 11.

   3. *Ear treatment*

Plaintiff was referred to a provider on December 30, 2017 for complaints of ear pain. WTSOF ¶ 50; Ex. A at 125. On January 12, 2018, he was referred to an ENT specialist for a consultation and prescribed a ten-day course of amoxicillin. WTSOF ¶ 51; Ex. A at 118. Plaintiff refused to take the amoxicillin. WTSOF ¶ 52; Ex. A at 147. Plaintiff had his ENT consultation with Dr. Sadeq Razvi[6] on February 22, 2018. WTSOF ¶ 53; Ex. A at 114. Dr. Razvi recommended that Plaintiff be sent for a detailed audiological evaluation with a follow-up appointment in four weeks. *Id.* Plaintiff refused appointments on May 17 and 24, 2018. WTSOF ¶¶ 54-55; Ex. A at 106-08.

Plaintiff complained during a medical appointment on June 20, 2018 that he was not receiving appropriate medical care. WTSOF ¶ 56; Ex. A at 102. When confronted with his refusal to complete the audiology testing, Plaintiff "state[d] he refused audiology [because] he knows what is wrong with him and he does not need an audiologist to tell him that [because] he himself is an audiologist." Ex. A at 102. Dr. Razvi again recommended hearing tests on August 23, 2018, but

---

[4] Not named as a party in this matter.
[5] Not named as a party in this matter.
[6] Not named as a party in this matter.

Plaintiff refused.  WTSOF ¶ 57; Ex. A at 96.  Plaintiff later told NJSP medical staff that he was refusing to take "the hearing tests because 'they are trying to force me to [w]ear hearing aids[.]'" WTSOF ¶ 58; Ex. A at 93 (alterations in original).  He was advised to stop using Q-tips.  WTSOF ¶ 58; Ex. A at 94.

Plaintiff came to medical on September 23, 2018 stating that he had tissue in his right ear from his attempts to clean it.  WTSOF ¶ 59; Ex. A at 85.  Staff cleaned Plaintiff's ear and sent him back to the unit.  *Id.*  Plaintiff came back on October 23, 2018 with another tissue stuck in his left ear.  WTSOF ¶ 60; Ex. A at 80.  White removed the tissue and instructed Plaintiff not to put anything in his ears.  *Id.*

Plaintiff saw Defendant Dr. Ihuoma Nwachukwu on December 20, 2018 for ear pain, who requested a consult with Dr. Razvi.  WTSOF ¶ 61; Ex. A at 62.  Dr. Razvi examined Plaintiff on January 16, 2019 and found an "old perforation" in the right eardrum and "severe" high frequency hearing loss in Plaintiff's right ear.  WTSOF ¶ 63; Ex. A at 60.

4. *Federal court proceedings*

Plaintiff filed several matters in this Court while detained at UCJ.  D.E. 1 (citing *Ballister v. Union County Prosecutor's Homicide Task Force*, No. 15cv7655; *Ballister v. Union County Jail*, No. 15cv7865; and *Ballister v. Shaikh*, No. 16cv1691). He filed a letter in those matters "wherein he alleges that Dr. Perez, a physician at the jail, has refused to treat him for an ongoing ear infection."  *Id.*  He "also filed a Motion for a Preliminary Injunction in all three of his cases seeking medical treatment for his ear and his Hepatitis."  *Id.*

On January 26, 2017, the Honorable Esther Salas, D.N.J., ordered that the letter and motion be filed as a new civil rights action under 42 U.S.C. § 1983 that named Dr. Perez and John Does 1-10 as defendants.  *Id.* at 4.  The Court appointed counsel for the limited purpose of identifying

Dr. Perez's full name and serving the complaint. D.E. 13. Counsel was relieved from representation on November 26, 2019. D.E. 28. The Court appointed two more attorneys to represent Plaintiff, both of whom were later permitted to withdraw. D.E.s 94, 127. Prior to withdrawing, Plaintiff's third attorney moved to amend the complaint. D.E. 55. Magistrate Judge Allen granted the motion on December 16, 2021 and filed the Amended Complaint. D.Es. 56, 57.[7]

The Amended Complaint alleges Teh and White were "[f]ully aware of [Plaintiff's] Hepatitis C and the condition of his ear" but did not "order for [Plaintiff] to be referred to a specialist, despite knowing his extensive medical history and the need for such treatment." Am. Compl. ¶¶ 13, 15. It further alleged that Obiora "prescribed Robaxin, a drug used to treat pain and muscle spasms, to address pain related to a pinched nerve [plaintiff] complained of [on] October 7, 2020." *Id.* ¶ 18. Plaintiff alleges he told "Obiora that he could not take Robaxin because of the impact it could and would have on his liver and kidneys [but] Obiora did not cease the prescription of Robaxin." *Id.* Plaintiff asserted White, Teh, and Obiora violated the Eighth Amendment's prohibition on cruel and unusual punishment. *Id.* ¶¶ 67-75.

Obiora filed an answer and cross-complaint on February 25, 2022. D.E. 59. Obiora, a licensed advance practice nurse, requested an Affidavit of Merit. *Id.* at 11; OSOF ¶¶ 9-10. Plaintiff has not served Obiora with an Affidavit of Merit. OSOF ¶ 17.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[7] The matter was reassigned to the undersigned on July 14, 2022. D.E. 88.

6

party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the initial burden of showing the basis for its motion and that there is no genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 323. The moving party must cite specific materials in the record. Fed. R. Civ. P. 56(c)(1)(A). "[T]he burden on the moving party may be discharged by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. "An unopposed summary-judgment motion is not tantamount to a default judgment, because the court still must find for itself that there is no genuine dispute of material fact and that the movant deserves judgment as a matter of law." *United States v. Brace*, 1 F.4th 137, 143 (3d Cir. 2021) (citing Fed. R. Civ. P. 56(a); *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990)).

**B.      Reconsideration**

"Motions for reconsideration exist to 'correct manifest errors of law or fact or to present newly discovered evidence.'" *Mid-Am. Salt, LLC v. Morris Cty. Coop. Pricing Council*, 964 F.3d 218, 230 (3d Cir. 2020) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). A court may grant a motion for reconsideration if the moving party shows one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Johnson v. Diamond State Port Corp.*, 50 F. App'x 554, 560 (3d Cir. 2002) (quoting *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).

7

C.  Recusal

The determination regarding recusal lies within the sound discretion of the judge managing the matter. *United States v. Wilensky*, 757 F.2d 594, 599-600 (3d Cir. 1985). The two principal statutes which address judicial recusal are 28 U.S.C. §§ 144 and 455.

"The test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004). "An objective inquiry, this test is not concerned with the question whether a judge actually harbors bias against a party." *Kennedy*, 682 F.3d at 258.

Section 144 requires recusal "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party . . . ." However, a "substantial burden is imposed on the party filing an affidavit of prejudice to demonstrate that the judge is not impartial." *Frolow v. Wilson Sporting Goods Co.*, 2011 WL 1337513, at *2 (D.N.J. Apr. 7, 2011) (citation omitted); *see also Kilkeary v. United States*, 2015 WL 3798061, at *4 (D.N.J. June 18, 2015).

III.  ANALYSIS

A.  Summary Judgment Motions

White and Teh move for summary judgment with respect to Plaintiff's deliberate indifference claim against them because there is no evidence to support the claim. D.E. 135-1 ("White & Teh Br.") at 13. Obiora argues Plaintiff's allegation against her is more appropriately considered a medical negligence claim than as an Eighth Amendment deliberate indifference

8

claim. Obiora's Brief, D.E. 152 ("Obiora Br.") at 13. As such, Obiora asserts Plaintiff was required to provide her with an Affidavit of Merit pursuant to New Jersey law. *Id.*

The Court finds that White and Teh are entitled to judgment as a matter of law because Plaintiff cannot establish they were deliberately indifferent to his medical needs. The Court will **GRANT** their summary judgment motion. The Court will **DENY** Obiora's summary judgment motion because the allegations in the Amended Complaint are sufficient to state a claim of deliberate indifference.

1. *Plaintiff cannot establish White and Teh were deliberately indifferent*

"The Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). "In order to sustain this constitutional claim under 42 U.S.C. § 1983, a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Id.* (alteration in original) (footnote omitted) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

White and Teh do not argue that Plaintiff does not have a serious medical need, so the only question is whether there is evidence in the record from which a reasonable factfinder could conclude that they were deliberately indifferent to that need. The Third Circuit has found deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (internal citations omitted).

9

"Deliberate indifference can also be found 'where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury.'" *Conrad v. De Lasalle*, 2021 WL 4593273, at *3 (D.N.J. Oct. 6, 2021) (quoting *McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012)).

In support of their motion, White and Teh have produced relevant portions of Plaintiff's medical records. *See generally* Ex. A. The records reflect that Plaintiff did see a specialist, Dr. Husain, contrary to the allegations in the Amended Complaint. Plaintiff was prescribed Zepatier, Mavyret, and Epclusa for Hepatitis C but refused to take more than one dose of Zepatier and Epclusa and refused to take Mavyret at all. WTSOF ¶¶ 21, 26-27, 33-37; Ex. A at 42-45, 57-58, 66-68. Dr. Husain and NJSP medical staff tried to work with Plaintiff to address his concerns about side effects, but Plaintiff did not cooperate. *See, e.g.,* WTSOF ¶ 37-44; Ex. A at 11-15. The same may be said about Plaintiff's ear treatments. Plaintiff saw Dr. Razvi but refused to participate in the prescribed hearing tests because "he does not need an audiologist . . . [because] he himself is an audiologist." Ex. A at 102; *see also* WTSOF ¶ 58 (stating Plaintiff refused to take hearing tests because "they" were trying to make him get hearing aids).

Plaintiff alleges White and Teh denied him necessary medical care when they failed to refer him to a specialist for his Hepatitis C and ear problems. Am. Compl. ¶¶ 13, 15. "[T]here is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'" *Pearson*, 850 F.3d at 535 (quoting *United States ex. rel. Walker v. Fayette Cty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). "[T]he deliberate indifference prong of a delay or denial of medical treatment claim involves only one subjective inquiry—since there is no presumption that the defendant acted properly, it lacks the objective, propriety of medical treatment, prong of an adequacy of care claim." *Id.* at 537. "All that is needed

is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors." *Id.*

Plaintiff has not submitted any evidence to oppose the summary judgment motion. His response papers only briefly address the summary judgment motion, and do not provide evidence to support the allegations. *See* D.E. 153 at 16-18. There is no evidence in the record from which a reasonable factfinder could conclude that White and Teh denied Plaintiff necessary medical care for non-medical reasons. Accordingly, the Court will **GRANT** White and Teh's summary judgment motion.

    2.    *Plaintiff states an Eighth Amendment claim against Obiora*

Plaintiff alleges Obiora prescribed him Robaxin to treat a pinched nerve. Am. Compl. ¶ 18. He asked to be taken off the medication because it could cause liver and kidney damage in people with Hepatitis C. *Id.* He alleges Obiora did not take him off the medication for ten days, during which time he had "jaundice, body weakness, exhaustion, pain in his stomach, back, chest, bloating in his stomach, painfully dark and discolored urine, and resulted in the perpetuation of numbness in one of [Plaintiff's] fingers." *Id.*

Obiora argues that Plaintiff's claim against her is "one of alleged medical negligence" because it relates to the appropriateness of the Robaxin treatment as opposed to the denial of care pled against other Defendants. Obiora Br. at 17; *see also* Obiora Supplemental Brief, D.E. 141 ("Obiora Supp. Br.").[8] She argues she is entitled to summary judgment because Plaintiff did not

---

[8] Obiora's Supplemental Brief argues the claim against her should be considered a medical malpractice claim pursuant to the Federal Tort Claims Act ("FTCA"). Obiora Supp. Br. at 8. The FTCA only applies to suits against the United States, not state actors. *CNA v. United States*, 535 F.3d 132, 138 (3d Cir. 2008), *as amended* (Sept. 29, 2008) ("The Government is the only proper defendant in a case brought under the FTCA."). If Plaintiff's claim were a medical malpractice claim, the Court would have supplemental jurisdiction over the tort claim as a related state law claim. *See* 28 U.S.C. § 1367(a).

provide her with an Affidavit of Merit as required for New Jersey professional negligence claims. Obiora Br. at 21 (citing N.J.S.A. § 2A:53A-26 et seq.). The Court will **DENY** this argument because the Amended Complaint plausibly alleges deliberate indifference.

Obiora's argument boils down to an assertion that Plaintiff has failed to state an Eighth Amendment claim. Obiora argues that "'[d]eliberate indifference' exists where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally *refuses* to provide it; (2) *delays* necessary medical treatment based on a non-medical reason; or (3) *prevents* a prisoner from receiving needed or recommended medical treatment.'" Obiora Br. at 18 (emphasis in original) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). This is true, but "[d]eliberate indifference can also be found 'where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury.'" *Conrad*, 2021 WL 4593273, at *3 (quoting *McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012)); *see also White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990) (finding prisoner stated deliberate indifference claim when "doctor allegedly insisted on continuing courses of treatment that the doctor knew were painful, ineffective or entailed substantial risk of serious harm to the prisoners"). It is therefore not accurate to say that a plaintiff can never state an Eighth Amendment claim by alleging that a prison official provided inadequate care. *See, e.g.*, *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (noting "there is a critical distinction between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment." (internal quotation marks omitted)).

Plaintiff alleges Obiora kept him on Robaxin for ten days despite knowing that Robaxin could cause liver and kidney damage in people with Hepatitis C. Am. Compl. ¶ 18. He further alleges that he suffered "jaundice, body weakness, exhaustion, pain in his stomach, back, chest,

bloating in his stomach, painfully dark and discolored urine, and resulted in the perpetuation of numbness in one of [his] fingers" because of Obiora's refusal to discontinue Robaxin. *Id.* If the Court accepts the allegations as true, Plaintiff has plausibly alleged an Eighth Amendment claim. *See Durham v. Kelley*, 82 F.4th 217, 223 (3d Cir. 2023) ("The Court must accept all facts in the complaint as true, draw all reasonable inferences in the prisoner's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim."). Plaintiff is not required to produce an Affidavit of Merit as part of an Eighth Amendment claim, so his failure to give one to Obiora does not warrant dismissal of his claim.

Whether Plaintiff can prove an Eighth Amendment claim against Obiora is an entirely different question, but Obiora has neither briefed nor provided evidence addressing that question. Obiora has the initial burden of showing the basis for her motion and that there is no genuine dispute of material fact. *Celotex Corp.*, 477 U.S. at 323. The Court must **DENY** Obiora's summary judgment motion because she has not produced evidence that entitles her to judgment as a matter of law on Plaintiff's Eighth Amendment claim. Obiora may file a new summary judgment motion after discovery closes.

### B. Motion for Reconsideration

Plaintiff objects to the Court's Sealing Order that the Court considers a motion for reconsideration. D.E. 153. The Court will **DENY** the motion.

First, the motion is untimely. Local Civil Rule 7.1(i) requires motions for reconsideration to be filed within 14 days after entry of the order or judgment. The Court sealed the unredacted Exhibit A on February 5, 2024. D.E. 146. Plaintiff did not submit any objections to the motion when it was filed in June 2023 or within 14 days of the Sealing Order. Therefore, he has not complied with the Local Rules in submitting a timely objection to the sealing request.

Second, Plaintiff has not met the standard for reconsideration. He asserts the Court "refused to question Plaintiff as to what his intent was and jumped to unfounded conclusions . . . that it was a 'good idea' to seal the documents to 'protect' the privacy of Plaintiff." D.E. 153 at 4. As the Court noted, Plaintiff failed to object to the motion when it was filed; that was his chance to be heard. The Court reviewed the factors enumerated in Local Civil Rule 5.3 and concluded that while the unredacted Exhibit A could remain sealed, White and Teh would have to file a redacted version of Exhibit A on the public docket. Sealing Order. The Court only permitted the parts of Plaintiff's medical records that were unnecessary to resolve the summary judgment motions to remain sealed. The Court specifically noted that "[i]nformation that is 'essential' to the Court's decision on the merits of the Amended Complaint should be publicly available." D.E. 145 at 5. In short, Plaintiff has not shown that there is a need to correct a clear error of law or fact or to prevent manifest injustice by unsealing the unredacted Exhibit A. The Court will **DENY** the motion for reconsideration.

C.   **Motion for Recusal**

Plaintiff also seeks the Court's recusal arguing that it is biased and "cannot be objective[.]" D.E. 153 at 41. He argues that the Court "would rather entertain frivolous motions from counsel for the defendants, waste plaintiff's remaining time and run out the clock on plaintiff's life than to actually review any motions and documents from plaintiff." *Id.* at 41-42 (emphasis omitted). He objects to the Court's failure to recuse Magistrate Judge Allen from the matter and argues the Court "obviously . . . would be slighted and have hard feelings about plaintiff wanting to recuse her Magistrate Judge." *Id.* at 40. He also lists the undersigned's previous tenure as President of the New Jersey Bar Association as evidence of a "[predisposition] to siding with any attorney over

14

plaintiff . . . ." *Id.* at 43. He cites the Court's Sealing Order as proof of its bias towards defendants. *Id.* at 42

"A recusal motion must be based on 'objective facts,' not mere 'possibilities' and 'unsubstantiated allegations.'" *United States v. Jacobs*, 311 F. App'x 535, 537 (3d Cir. 2008) (quoting *United States v. Martorano*, 866 F.2d 62, 68 (3d Cir. 1989)). "If a party claims that a judge should recuse because of a personal bias, prejudice, or lack of impartiality towards that party, he generally must show that such bias or prejudice is grounded in extrajudicial sources, such as personal animus, rather than judicial actions that can be corrected on appeal." *Thompson v. Eva's Vill. & Sheltering Program*, 2005 WL 2474930, at *2 (D.N.J. Oct. 5, 2005) (citing *Smith v. Danyo*, 585 F.2d 83, 87 (3d Cir. 1978)). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Plaintiff fails to demonstrate that the Court either lacks impartiality, has a personal bias or prejudice against him derived from extrajudicial sources, or harbors a deep-seated antagonism that renders fair judgment impossible.

Plaintiff's dissatisfaction with the progression of this case is not a reason to disqualify this Court, assigned to the matter only since July 14, 2022. D.E. 88. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion" because, "[i]n and of themselves, they cannot possibly show reliance upon an extrajudicial source." *Liteky*, 510 U.S. at 555. The Court has an obligation to consider all motions filed by the parties, and Plaintiff did not file any response to the motion to seal until after the motion was filed. He cannot complain that the Court only considered Defendants' arguments when he failed to participate in the proceedings. The Court has

15

extended Plaintiff's time to respond to dispositive motions on several occasions to ensure he has ample time to be heard. *See, e.g.*, D.E. 129 (extending Plaintiff's time to respond to motion to dismiss); D.E. 138 (allowing for supplemental briefing on *Wilson v. United States of America*, 79 F.4th 312 (3d Cir. 2023)); and D.E. 148 (extending Plaintiff's time to file objections to summary judgment). There is no factual support for Plaintiff's claims that the Court favors defendants because they are represented by attorneys; indeed, the Court has denied some of Defendants' motions. *See* D.E. 137 (denying Union County Department of Corrections' Motion to Dismiss); *supra* (denying Obiora's summary judgment motion).

A reasonable, outside observer in possession of all of these facts would not question this Court's ability to impartially consider and decide the merits. Moreover, the undersigned does not harbor any biases or prejudices toward Plaintiff or the merits of his claims, has not participated in this case other than as a judge, and has no financial interest in this matter. *See* 28 U.S.C. § 455(b). The Court will **DENY** the recusal request.

IV.     **CONCLUSION**

For the reasons stated above, the Court will **GRANT** White and Teh's summary judgment motion and **DENY** Obiora's summary judgment motion. The Court will **DENY** the motion for reconsideration and motion for recusal.

An appropriate Order accompanies this Opinion.

 7/08/2024                                                                    Evelyn Padin, U.S.D.J.
Date